UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BELINDA K. SWEETIN ,

                              Plaintiff,

        -vs-

CAROLYN  W.  COLVIN,  Commissioner
of Social Security,[1]

                              Defendant.

No.    2:13-CV-03091-WFN

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

        Before the Court are cross-Motions for Summary Judgment (ECF Nos. 16 and 21).
Attorney D. James Tree represents Plaintiff.  Special Assistant United States Attorney
Diana Andsager represents Defendant.  The Court has reviewed the administrative record
and briefs filed by the parties and is fully informed.

## JURISDICTION

        Plaintiff  protectively  applied  for  disability  insurance  benefits  [DIB]  and
supplemental  security  income  benefits  [SSI]  on  August  15,  2006,  alleging  disability
beginning  on  April  20,  2006,  due  to  physical  and  mental  impairments.   The  application
was denied initially and on reconsideration.

        A  hearing  was  held  before  Administrative  Law  Judge  [ALJ]  Donna  Montano  on
May  7,  2009.   The  ALJ  concluded  that  Plaintiff  was  not  disabled.   Plaintiff  appealed  the

_____

        [1]Carolyn  W.  Colvin  became  the  Acting  Commissioner  of  Social  Security  on
February  14,  2013.   Pursuant  to  Rule  25(d)  of  the  Federal  Rules  of  Civil  Procedure,
Carolyn  W.  Colvin  is  substituted  for  Michael  J.  Astrue  as  the  defendant  in  this  suit.  No
further  action  need  be  taken  to  continue  this  suit  by  reason  of  the  last  sentence  of  42
U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

ALJ's decision and the Appeals Council remanded the case to a new ALJ to resolve questions about Plaintiff's mental Residual Functional Capacity [RFC], among other issues. A second hearing (via video) was held November 29, 2011 before ALJ Steve Lynch.   At the hearing, Plaintiff, represented by counsel, testified as did Clementine Palmer, Plaintiff's case manager at Central Washington Comprehensive Mental Health [CWCMH], and Nancy Bloom, a vocational expert [VE].   The ALJ again concluded that Plaintiff was not disabled.   The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g), this final decision is appealable to the district court.   Plaintiff sought judicial review on August 30, 2013.

## FACTS

The facts of the case are set forth in detail in the transcript of the proceedings and are briefly summarized here.

Plaintiff was 48 years old at the time of the second hearing.  Plaintiff graduated from high school and attended college for one year.  (Tr. at 265.)  Prior to the onset of her impairments, Plaintiff worked as a convenience store clerk, a caregiver, and as a cook, server, and manager for a variety of restaurants.  (Tr. at 61-62; 286.)  Currently, Plaintiff's only source of income is state welfare.  (Tr. at 79.)  Plaintiff reported being homeless for over two years prior to 2006 (Tr. at 492), but she lived in an apartment by 2009 (Tr. at 57).

Plaintiff asserts a myriad of mental and physical impairments.  Plaintiff claims that "everything fell apart," physically and mentally, in 2006 when she had a heart attack and heart surgery.  (Tr. at 58, 81.)  Plaintiff claims to suffer from hepatitis C, degenerative joint disease, diabetes, and obesity.  (Tr. at 55.)  Plaintiff experiences pain in her hands, legs, chest, lower back, and tailbone.  (Tr. at 58, 81).  Plaintiff states that she has "no control over [her] bladder."  (Tr. at 84.)  Plaintiff claims to see "little green aliens" (Tr. at 80), people who are not living (Tr. at 82-83), and flesh-eating germs crawling on people's skin (Tr. at 86).  Plaintiff states that she hears voices "all the time."  (Tr. at 82.)  Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

uses a variety of prescription medication. (Tr. at 82.) Plaintiff has a history of substance abuse, including alcohol and prescription drugs. (Tr. at 94-95.)

On a typical day, Plaintiff spends most of her time napping. (Tr. at 84.) Plaintiff has a friend who visits on a regular basis to help with household chores and to make sure Plaintiff is taking her medication. (Tr. at 84.) Plaintiff can wash herself, but it is very painful. (Tr. at 84.) Plaintiff claims that it is difficult for her to stand, walk, and move. (Tr. at 58.) Plaintiff is able to drive to her medical appointments (Tr. at 91.) Plaintiff has difficulty interacting with other people, especially children. (Tr. at 95.)

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d 1190, 1193-94 (9th 2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

Preliminarily, for purposes of DIB, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009.

At step one, the ALJ determined that Plaintiff did not engage is substantial gainful activity since April 20, 2006, the alleged onset date.

At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, alcohol dependence, nicotine dependence, a personality disorder, posttraumatic stress disorder, obesity, diabetes, obstructive sleep apnea, and degenerative disc disease.  The ALJ concluded that Plaintiff's hepatitis C and cardiac condition were not severe impairments.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments described at 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work subject to certain exertional, postural, environmental, and social limitations.  The ALJ also concluded that Plaintiff was unable to perform any past relevant work.

At step five, the ALJ concluded that, given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including work as a motel cleaner, price marker, and bakery line worker.

## STANDARD OF REVIEW

In *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. [*Tackett*, 180 F.3d at 1097]. Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. But a decision supported by substantial evidence will still be set aside if the ALJ did not apply the proper legal standards in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ISSUES

1. Did the ALJ err in discounting Plaintiff's subjective complaints and finding Plaintiff not credible?

2. Did the ALJ properly evaluate the medical evidence regarding Plaintiff's mental impairments, including the opinions of acceptable medical sources and other sources?

3. Did the ALJ err at step two by not finding bipolar disorder to be a severe impairment?

4. Did the ALJ err in posing a hypothetical to the VE that did not take into account all of Plaintiff's limitations?

## DISCUSSION

### 1. Did the ALJ err in discounting Plaintiff's subjective complaints and finding Plaintiff not credible?

Plaintiff argues that the ALJ erred by finding Plaintiff not credible and by discounting her subjective complaints. The Court agrees and finds that the ALJ failed to give specific, clear, and convincing reasons for finding Plaintiff not credible and for rejecting Plaintiff's subjective complaints.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

Generally, it is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. "To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and, (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony about the severity of the symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

In this case, the ALJ concluded that Plaintiff was not entirely credible. (Tr. at 23-24.) In so finding, the ALJ reasoned (1) Plaintiff's complaints of complications arising from her heart attack are contradicted by treatment records reflecting "no ongoing cardiac symptoms"; (2) Plaintiff's ability to exercise, walk, and do yoga contradict her allegations of debilitating symptoms; (3) some of Plaintiff's impairments, such as sleep apnea and diabetes, are well controlled with medication; and, (4) minimal treatment, including Plaintiff's failure to take prescribed pain medications, is not consistent with allegations of debilitating symptoms. (Tr. at 23-24.) The ALJ pointed to no evidence in the record suggesting that Plaintiff was malingering.

Neither the first nor third reasons given by the ALJ are grounds for discounting Plaintiff's credibility because they are not probative as to whether Plaintiff is telling the truth about her medical problems. *See Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007). The fact that Plaintiff believes her health problems stem from her heart attack in 2006, and the fact that this belief is unsupported by medical evidence, does not implicate the question of whether Plaintiff is truthful in the reporting of her symptoms. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

1  Plaintiff does not argue that she has ongoing cardiac problems or attempt to establish
2  impairments arising from her heart attack.  It is simply her own explanation of her current
3  condition.  Regarding the third reason given by the ALJ, the fact that Plaintiff can control
4  certain impairments with medication does not mean that *all* her impairments can be so
5  controlled.  These two reasons given by the ALJ are not probative to whether Plaintiff
6  truthfully reported her symptoms.

7        Regarding the ALJ's second reason, the Court finds that the ALJ's conclusion that
8  Plaintiff is able to "lead an active lifestyle" is not supported by substantial evidence.
9  "[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to
10  spend a substantial part of his day engaged in pursuits involving performance of physical
11  functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (internal quotation
12  marks omitted).  A claimant need not be "utterly incapacitated" to be eligible for benefits.
13  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thompson v. Sullivan*, 987 F.2d
14  1482, 1490 (10th Cir. 1993) ("The sporadic performance of household tasks or work does
15  not establish that a person is capable of engaging in substantial gainful activity.").  In
16  this case, the ALJ's characterization of Plaintiff's ability to "lead an active lifestyle"
17  seems to be based on two reports made in March 2008 in which Plaintiff reported
18  exercising at the gym, walking three miles a day, and doing yoga.  (Tr. at 23 (citing [Tr.
19  at 719-21]); *see also* Tr. at 758 (In a May 2008 report, Plaintiff reported exercising at a
20  gym).)  Except for these isolated reports, however, the record overwhelming evidences
21  that Plaintiff has great difficulty performing activities of daily living.  *See infra*.  The
22  ALJ's conclusion that Plaintiff is able to exercise, walk for several miles, and do yoga on
23  a daily basis is not supported by substantial evidence, i.e., "such relevant evidence
24  as a reasonable mind might accept as adequate to support a conclusion." *Richardson*,
25  402 U.S. at 401.   As such, the Court finds that it is not a clear and convincing reason to
26  discount Plaintiff's credibility.

27        Regarding the ALJ's fourth reason for discounting Plaintiff's credibility, the Court
28  finds that Plaintiff's failure to take pain medication is not a clear and convincing reason for

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

discounting Plaintiff's credibility.  An unexplained failure to follow a course of treatment may indicate that a claimant's impairments are not as bad as the claimant alleges.  *Orn*, 495 F.3d at 638.  Failure to follow a course of treatment may be excused, however, if the claimant's noncompliance is attributable to his or her mental illness, *Molina*, 674 F.3d at 1114, or if the claimant cannot afford the treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  In this case, it appears that Plaintiff has overwhelmingly complied with the treatment prescribed by her doctors.  She has undergone a number of surgeries, seen a counselor for several years, and taken a myriad of different prescription medications.  The fact that, on one occasion, Plaintiff did not finish her pain medication is not substantial evidence to find that Plaintiff failed to follow her course of treatment.  The ALJ also failed to consider other reasons that might explain why Plaintiff failed to take all of her pain medication, including her mental impairments or the fact that she used to be addicted to prescription pills.

In conclusion, the Court finds that the ALJ erred in finding Plaintiff not credible.  The ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective complaints.  The ALJ's first and third reasons were deficient because they were not probative of Plaintiff's credibility.  The ALJ's second and fourth reasons were not supported by substantial evidence.  Because the ALJ erred in discounting Plaintiff's credibility, the Court will credit as true her reporting of limitations. *See generally Garrison v. Colvin*, No. 12-15103, at 46-51 (9th Cir. July 14, 2014) (discussing credit-as-true rule).

**2.  Did the ALJ properly evaluate the medical evidence, including the opinions of acceptable medical sources and other sources?**

Plaintiff argues that the ALJ erred by discounting the opinions of medical sources, including her treating physicians, who identified "very significant mental health limitations."  (ECF No. 16 at 13.)  Plaintiff also argues that the ALJ erred in discounting the opinions of "other" sources, including Plaintiff's therapists, case manager, and sister-in-law regarding Plaintiff's ability to work.  The Court agrees that the ALJ erred in evaluating most of the opinions of certain medical and "other" sources.

### a. Acceptable medical sources

Only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). In weighing medical source opinions, the ALJ should distinguish between three different types of doctors: (1) treating doctors, who actually treat the claimant; (2) examining doctors, who examine but do not treat the claimant; and (3) nonexamining doctors who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating doctor than to the opinion of an examining doctor. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(1)-(2)). The ALJ should give more weight to the opinion of an examining doctor than to the opinion of a nonexamining doctor. *Id.*

When a doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (quoting *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989)). When a doctor's opinion is contradicted by another doctor, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first doctor. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In this case, the ALJ ultimately concluded that Plaintiff was not disabled. In reaching this conclusion, the ALJ gave "significant weight" to the opinions of the "State agency consultants," i.e., Norman Staley, M.D. and Edward Beaty, Ph.D. (Tr. at 28.)

Dr. Staley completed a psychical RFC assessment of Plaintiff in September 2006. (Tr. at 419-26.) Dr. Staley found that Plaintiff suffered very few limitations and opined that Plaintiff "would be capable of light work." (Tr. at 426.)

Dr. Beaty completed a "Psychiatric Review Technique" and a mental RFC assessment of Plaintiff in November 2006. In the Psychiatric Review Technique, Dr. Beaty summarized Plaintiff's medical records and diagnosed Plaintiff with a borderline personality disorder and a "single episode" of "MDD," an affective disorder. (Tr. at 501, 505.) Dr. Beaty assessed only mild and moderate functional limitations and concluded

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

that Plaintiff "would be capable of simple work [with] superficial contact [with] the public [and] no contact [with] children." (Tr. at 510.) In the mental RFC assessment, Dr. Beaty found Plaintiff "not significantly limited," or only "moderately limited," regarding Plaintiff's memory and ability to understand, ability to sustain concentration and persistence, capacity for social interaction, and capacity for adaption. (Tr. at 512-13.) Dr. Beaty concluded that Plaintiff "is able to understand and carry out non-complex, multi-step tasks. Sustained concentration and pace will be episodically disrupted by her depressive symptoms and alleged chronic pain." (Tr. at 514.) Dr. Beaty also described Plaintiff as "short tempered and irritable" but that she was "able to tolerate superficial small group interactions." (Tr. at 514.)

The opinions of Drs. Staley and Beaty contradict the opinions of those doctors who opined that Plaintiff could not work. Thus, the Court must determine whether the ALJ provided "specific and legitimate reasons" for rejecting the opinions of the doctors who concluded that Plaintiff could not work. *Murray*, 722 F.2d at 502.

### i. Lawrence Lyon, Ph.D.

Dr. Lyon completed a psychological evaluation of Plaintiff in October 2006. Dr. Lyon diagnosed Plaintiff with major depressive disorder, nicotine dependence, and a personality disorder and assessed a global assessment of functioning [GAF] of 38. (Tr. at 495.) Dr. Lyon noted, "It was somewhat difficult to arrive at a clear estimate of [Plaintiff's] level of intellectual functioning." (Tr. at 494.) Dr. Lyon also noted that Plaintiff "did not show clear signs of a formal thought disorder." (Tr. at 494.) Dr. Lyon described Plaintiff as "sullen" and "agitated." (Tr. at 494.) Dr. Lyon did not assess any functional mental limitations or offer an opinion regarding Plaintiff's ability to work.

The ALJ concluded that "the diagnoses provided by Dr. Lyon are supported by the treatment record." (Tr. at 25.) But the ALJ gave little weight to Dr. Lyon's GAF 38 assessment because Dr. Lyon provided "no explanation for the low GAF score." (Tr. at 25.) The ALJ speculated that Plaintiff's homelessness might have accounted for the low GAF score. (Tr. at 25.) The ALJ also noted that, according to Dr. Lyon, Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

appeared well-groomed, well-orientated, and capable of performing daily activities. (Tr. at 25.)

The ALJ gave specific and legitimate reasons for rejecting Dr. Lyon's GAF 38 assessment. Without an explanation of the low GAF score, it is impossible to determine how Plaintiff's mental impairments affected her ability to work. *See Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. The claimant's impairment, for example, might lie solely within the social, rather than the occupation, sphere."). Because the ALJ have specific and legitimate reasons for rejecting Dr. Lyon's GAF score, and because the ALJ found the remainder of Dr. Lyon's opinions "supported by the treatment record," the ALJ did not err in evaluating Dr. Lyon's opinions.

### ii.   M. Garnett, M.D.

In May 2009, in response to a questionnaire provided by Plaintiff's counsel, Dr. Garnett (together with David Tuning, P.A.) opined that Plaintiff would need to lie down several times a day and that regular and continuous work would cause increased pain and fatigue. (Tr. at 835-36.)

The ALJ gave little weight to this opinion because it was "not fully consistent with the treatment record." (Tr. at 24.) The ALJ also discounted the opinion because it was partially based on Plaintiff's diagnosis of hepatitis C and the "treatment records reflect no symptoms related to hepatitis C"). (Tr. at 24.)

The ALJ failed to give specific and legitimate reasons for rejecting Dr. Garnett's opinions regarding Plaintiff's need to lie down during the day. Inconsistency with the medical record is generally a legitimate reason to discount an opinion. *See Batson*, 359 F.3d at 1195. But in this case, the record largely supports Dr. Garnett's opinion that Plaintiff needs to lie down during the day. In December 2008, Lisa Nevara, F.N.P. also opined that Plaintiff needs to lie down during the day. (Tr. at 679.) Plaintiff's own testimony, when properly credited, also establishes her need to lie down during the day. (Tr. at 84.) Other sources, discussed *infra*, further corroborate Dr. Garnett's opinion

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

regarding Plaintiff's need to lie down during the day.  (*See*, *e.g.*, Tr. at 94, 238.)  The ALJ also erred when he discounted Dr. Garnett's opinion because it was partially based on Plaintiff's diagnosis of hepatitis C.  The ALJ accurately states that the record reflects that Plaintiff does not have symptoms related to hepatitis C.  But Dr. Garnett's diagnosis of degenerative disc disease could also reasonably be expected to cause the "fatigue" and "pain" that makes it necessary for Plaintiff to lie down during the day.  (Tr. at 835.)  In reaching the opposite conclusion, the ALJ improperly substituted his own opinion over the opinion of Plaintiff's doctor.  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The ALJ erred in evaluating Dr. Garnett's opinions.

### iii.    Kimberly A. Humann, M.D.

Dr. Humann was Plaintiff's treating physician at CWCMH in Goldendale, Washington.  In August 2006, Dr. Humann completed a psychiatric evaluation of Plaintiff, diagnosing bipolar disorder and posttraumatic stress disorder.  (Tr. at 645.)  Dr. Humann continued to see Plaintiff on a regular basis through March 2007.  Over this period, Dr. Humann observed Plaintiff's "ongoing mood issues" and continued to diagnose Plaintiff with bipolar disorder, post-traumatic stress disorder, and parasitosis, among other impairments.   (Tr. at 640-47, 752, 778, 786.)   Dr. Humann described her clinical observations of Plaintiff, but apparently did not perform any psychological testing.   In October 2008, Dr. Humann completed a mental RFC assessment of Plaintiff and identified many marked and severe limitations.  (Tr. at 676-78).  Dr. Humann opined, "[Plaintiff] is highly unlikely to be able to sustain employment due to her inability to respond appropriately to supervisors or work with others."  (Tr. at 678.)  In April 2009, Dr. Humann completed another mental RFC assessment, reaching nearly identical conclusions as she did in the October 2008 evaluation.  (Tr. at 795-97.)

The ALJ gave little weight to Dr. Humann's opinions because they were "overly restrictive" and "based largely on [Plaintiff's] subjective complaints and are conclusory." (Tr. at 26.)  The ALJ also concluded that "[t]he opinion of Dr. Humann is not consistent with the treatment record."  (Tr. at 26.)  The ALJ noted that Dr. Humann described

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

Plaintiff as cheerful, relaxed, and engaged, and that Plaintiff's affect was full, memory, attention, and concentration were intact. (Tr. at 26.)

The ALJ did not give specific and legitimate reasons for according little weight to Dr. Humann's opinions. Simply stating that Dr. Humann's opinions were "overly restrictive" and "conclusory" are not specific reasons for rejecting her opinion. They are too general and not related to specific diagnoses, opinions, or observations made by Dr. Humann. The ALJ further erred in rejecting Dr. Humann's opinions because they were based on Plaintiff's subjective complaints. As the Court found *supra*, the ALJ erred in finding Plaintiff not credible and discounting her description of her limitations. Furthermore, Dr. Humann was qualified to make clinical observations. Nothing in the record suggests that Dr. Humann relied on Plaintiff's description of her symptoms more heavily than Dr. Humann's own clinical observations. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (finding that the ALJ erred by rejecting an examining physician's opinion by "questioning the credibility of the [claimant's] complaints where the [doctor] [did] not discredit those complaints and support[ed] his ultimate opinion with his own observations."). The Court finds that the ALJ erred by giving little weight to the opinions of Dr. Humann, Plaintiff's treating physician, without giving specific and legitimate reasons for rejecting them.

### iv.    Kari Heistand, M.D.

Dr. Heistand was Plaintiff's treating physician at CWCMH starting in March 2010. (Tr. at 1108-10.) At that time, Dr. Heistand noted that "[Plaintiff] has been seen here for several years for a diagnosis of bipolar disorder." (Tr. at 1108.) Dr. Heistand continued to see Plaintiff periodically through at least November 2011. (Tr. at 1378-1412.) In March 2011, Dr. Heistand noted that Plaintiff reported gaining sixty five pounds due to not exercising. (Tr. at 1378.) In April 2011, Dr. Heistand completed a mental RFC assessment of Plaintiff. (Tr. at 1616-18.) Dr. Heistand commented that Plaintiff "experiences very severe psychotic symptoms that interfere significantly with her overall

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

1  functioning." (Tr. at 1618.)  Dr. Heistand assessed Plaintiff with a number of marked and
2  severe functional limitations.  (Tr. at 1616-17.)

3      The ALJ gave little weight to Dr. Heistand's opinions.  (Tr. at 27.)  The ALJ
4  reasoned that Plaintiff responded well to treatment and that the limitations assessed by Dr.
5  Heistand were inconsistent with her treatment notes, "which reflect minimal findings on
6  mental status examinations."  (Tr. at 27.)  The ALJ cited to instances where medication
7  helped Plaintiff sleep better and decreased auditory hallucinations, although Plaintiff "still
8  had residual depression and visual hallucinations."  (Tr. at 27.)

9      The ALJ failed to give specific and legitimate reasons for according little
10  weight to Dr. Heistand's opinions.  Internal inconsistencies in treatment notes may be
11  a legitimate reason for discounting a medical opinion.  But the ALJ must read
12  treatment notes "in context of the overall diagnostic picture [drawn by the doctor]."
13  *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also id.* ("some
14  improvement does not mean that the person's impairments no longer seriously affect
15  her ability to function in a workplace"). Dr. Heistand's mental status examination notes
16  document Dr. Heistand's observations concerning Plaintiff's appearance/behavior,
17  cooperation, speech, mood, affect, and cognition.  These observations, which were made in
18  one-on-one office visits, are not necessarily inconsistent with the severe limitations
19  assessed by Dr. Heistand in the areas of understanding and memory, sustained
20  concentration and persistence, social interaction, and adaption.  (Tr. at 1616-17.)
21  The ALJ's reasoning that Dr. Heistand's treatment notes are internally inconsistent
22  fails to consider the notes in context with Dr. Heistand's diagnoses and assessed
23  limitations.  The ALJ's second reason for rejecting Dr. Heistand's opinion is also
24  insufficient.  Generally, the fact that a condition can be remedied by medication is a
25  legitimate reason for discrediting an opinion.  *Warre v. Comm'r of Soc. Sec. Admin.*,
26  439 F.3d 1001, 1006 (9th Cir. 2006). But in this case, the ALJ candidly acknowledged
27  that, even when taking medication, Plaintiff "still ha[s] residual depression and
28  visual hallucinations."  These mental impairments go to the heart of Plaintiff's claim, and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

as acknowledged by the ALJ, these impairments are not completely remedied by medication. The ALJ erred in rejecting Dr. Heistand's opinions without providing specific and legitimate reasons.

### v. Trula Thompson, M.D.

In July 2006, Dr. Thompson certified Plaintiff eligible for state Medicaid. (Tr. at 631.) Dr. Thompson diagnosed Plaintiff with major depressive disorder, recurrent and severe, with psychotic features. (Tr. at 631.) The ALJ gave little weight to Dr. Thompson's opinion because it provided "no assessment of [Plaintiff's] specific functional limitations." (Tr. at 28.) Just because a claimant has been diagnosed with an impairment does not necessarily mean that the impairment is disabling. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Without an opinion as to how Plaintiff's impairments affect her ability to work, Dr. Thompson's opinions cannot establish a disability. The ALJ did not err in giving little weight to Dr. Thompson's opinions.

### b. "Other" sources

Plaintiff argues that the ALJ erred by rejecting the opinions of "other" sources for no reason other than because they were "not acceptable medical sources." (ECF No. 21 (citing Tr. at 24, 26).)

An ALJ must consider evidence from "other sources," "as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. "Other" sources include nurse-practitioners, physicians' assistants, therapists, and family members. 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. *Thomas*, 278 F.3d at 957. Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

### i.  Rebecca Nelson, A.R.N.P.

In May 2010, Ms. Nelson completed a physical evaluation of Plaintiff.  Ms. Nelson diagnosed Plaintiff with "chronic [hepatitis] C," "spinal arteritis," and "poorly controlled DM." (Tr. at 1551).  Ms. Nelson opined that Plaintiff's ability to work was "severely limited," i.e., "unable to lift at least 2 pounds or unable to stand and/or walk." (Tr. at 1551.)  In April 2011, Ms. Nelson noted that Plaintiff's condition was "deteriorating." (Tr. at 1608.)  In another April 2011 office visit, Ms. Nelson noted that Plaintiff was "unable to walk at this time" due to pain. (Tr. at 1629.)  The ALJ gave little weight to Ms. Nelson's opinion because Ms. Nelson's findings regarding Plaintiff's limited range of motion of back and shoulders did not support the functional limitations Ms. Nelson described. (Tr. at 25.)  The ALJ also found that Plaintiff's hepatitis C is "asymptomatic and her diabetes is well controlled with medication." (Tr. at 25.)

The Court finds that the ALJ provided germane reasons for rejecting Ms. Nelson's opinions regarding Plaintiff's hepatitis C and range of motion in her back and shoulders. The ALJ, however, provided no reasoning for rejecting Ms. Nelson's opinions concerning Plaintiff's ability to walk and her deteriorating condition.  As discussed *supra* and *infra*, the record supports Ms. Nelson's opinion that Plaintiff has difficulty walking and finds it increasingly difficult to complete activities of daily living.  The ALJ failed to provide a germane reason for rejecting these opinions.

### ii.  Lisa Nevara F.N.P.

In April 2008, Ms. Nevara completed a physical evaluation of Plaintiff for her application for state benefits.  Ms. Nevara noted that Plaintiff experienced back pain, but exercise, meditation, and stretching helped with the pain.  (Tr. at 728.) Ms. Nevara opined that Plaintiff was capable to "light" work.  (Tr. at 729.)  In March 2008, Ms. Nevara noted "[Plaintiff] is exercising in the gym. She uses [the gym] as part of her anger control.  If she is getting angry she works out very hard and

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

anger tends to dissipate." (Tr. at 719.) Ms. Nevara also noted that Plaintiff "is walking 3 miles per day and doing some yoga." (Tr. at 721.) In December 2008, in response to a questionnaire from Plaintiff's attorney, Ms. Nevara stated that Plaintiff needed to lie down during the day. (Tr. at 679.) The ALJ gave little weight to Ms. Nevara's opinion about Plaintiff's need to lie down during the day. (Tr. at 24.) The ALJ found no support in the record that Plaintiff needed to lie down during the day and found Ms. Nevara's opinion contradicted by Plaintiff's ability to "lead an active lifestyle." (Tr. at 24.)

The Court finds the ALJ did not provide germane reasons for rejecting Ms. Nevara's opinions. As discussed *supra*, contrary to the ALJ's conclusion, there *is* evidence in the record supporting Ms. Nevara's opinion that Plaintiff needs to lie down during the day. Dr. Garnett opined the same in May 2009, Tr. at 835, and Plaintiff and other sources further corroborated this opinion. Furthermore, as discussed *supra*, the ALJ's conclusion that Plaintiff is able to "lead an active lifestyle" is not supported by substantial evidence. The ALJ appears to have based this conclusion on isolated reports in which Plaintiff reported exercising, walking, and doing yoga. The Court finds that reliance on isolated reports of physical activity cannot constitute a germane reason for discounting Ms. Nevara's opinions.

### iii.    Steven Woolpert, M.H.P.

In May 2006, Mr. Woolert completed a psychological/psychiatric evaluation of Plaintiff for Plaintiff's application for state benefits. Mr. Woolpert diagnosed Plaintiff with major depressive disorder and a personality disorder. (Tr. at 657.) Mr. Woolpert opined that Plaintiff suffered from several moderate and marked limitations that would "suggest consideration for eligibility of [GAX]." (Tr. at 657-59.)

The ALJ gave little weight to Mr. Woolpert's opinions. (Tr. at 26.) The ALJ reasoned that Mr. Woolpert was "not an acceptable medical source and his assessment [was] largely based on [Plaintiff's] subjective complaints, which are not fully credible." (Tr. at 26.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 17

The ALJ did not provide germane reasons for rejecting Mr. Woolpert's opinions. Even though medical source evidence is the only way to establish an impairment, an ALJ cannot ignore information from non-acceptable medical sources regarding a claimant's physical and mental capabilities. *Sprague*, 812 F.2d at 1232. Furthermore, as discussed *supra*, the ALJ erred in finding Plaintiff not credible. It necessarily follows that rejecting Mr. Woolpert's opinions because they were based on Plaintiff's subjective complaints is not a germane reason for rejecting Mr. Woolpert's opinions. The ALJ erred in evaluating Mr. Woolpert's opinions.

### iv.   Rob Garner, M.A.

Mr. Garner was Plaintiff's therapist at CWCMH. In April 2007, Mr. Garner diagnosed Plaintiff with depression and bipolar disorder. (Tr. at 633.) Mr. Garner noted several marked and severe functional limitations. (Tr. at 634.) Mr. Garner noted that Plaintiff "appears to be making steady progress toward treatment goals." (Tr. at 635.) In April 2008, Mr. Garner completed a psychological/psychiatric evaluation of Plaintiff for Plaintiff's application for state benefits. Mr. Garner assessed multiple marked and severe mental limitations and diagnosed Plaintiff with bipolar disorder. (Tr. at 734.) Mr. Garner noted that Plaintiff would be "highly dysfunctional without her medication[,] [but even] with the [medication] she is still very difficult to be around." (Tr. at 735.) Mr. Garner opined that Plaintiff "remain[ed] very compromised in her ability to work a job." (Tr. at 736.) Mr. Garner completed another psychological/psychiatric evaluation in April 2009, which is nearly identical to the evaluation he completed in April 2008. (Tr. at 788-91.)

In May 2010, Mr. Garner completed yet another psychological/psychiatric evaluation of Plaintiff. Mr. Garner assessed a number of severe functional mental disorders, including depression, anxiety, and hallucinations. (Tr. at 1542.) Mr. Garner diagnosed Plaintiff with bipolar disorder. (Tr. at 1543.) Mr. Garner found that Plaintiff was severely limited cognitively and socially, but might be able to do an "[a]ctivity where no talking is required and maybe walking or sitting at the library." (Tr. at 1544.) Mr.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 18

Garner recorded similar findings in an April 2011 psychological/psychiatric evaluation. At that time, Mr. Garner stated that Plaintiff's "symptoms appear to be increasingly worse despite the mental treatment that she has faithfully been putting into practice." (Tr. at 1567.)  In October 2011, Mr. Garner noted that Plaintiff "continues to experience both audio and visual hallucinations on a regular basis but because of her change in medication she reports that the intensity of them has diminished." (Tr. at 1752.)

The ALJ gave little weight to Mr. Garner's opinions.  The ALJ reasoned that Mr. Garner "is not an acceptable medical source[,] his opinions are overly restrictive[, and are] based largely on [Plaintiff's] subjective complaints and are conclusory." (Tr. at 26.)  The ALJ also found Mr. Garners' opinions "not consistent with the treatment record." (Tr. at 26.)  The ALJ cited to instances where Plaintiff appeared to respond well to treatment and instances where she denied self-injurious thoughts, paranoid delusions, impulsivity, and obsessions/compulsions. (Tr. at 26-27.)

The ALJ did not give germane reasons for according little weight to Mr. Garner's opinions.  Simply stating that Mr. Garner's opinions were "overly restrictive" and "conclusory" are not specific reasons for rejecting them.  They are too general and not related to specific diagnoses, opinions, or observations made by Mr. Garner.  The ALJ further erred in rejecting Mr. Garner's opinions because they were based on Plaintiff's subjective complaints.  The Court found *supra*, the ALJ erred in finding Plaintiff not credible and by discounting her subjective complaints.  Also, although the record contains instances where Plaintiff responds well to treatment for certain impairments, the record is consistent in that treatment does not fully alleviate Plaintiff's mental impairments, including her visual hallucinations.  The ALJ erred in evaluating Mr. Garner's opinions.

### v.   Clementine Palmer

Ms. Palmer was Plaintiff's mental health case manager at CWCMH.  Ms. Palmer is part of Plaintiff's treatment team at CWCMH along with Dr. Heistand and Mr. Garner. (Tr. at 93.)  Ms. Palmer testified about Plaintiff's need to sleep during the day, her ability

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 19

to perform daily activities, such as driving and grooming, and her difficulty with interacting with others. (Tr. at 94-96.) Ms. Palmer reported that Plaintiff would likely not respond well to a supervisor. (Tr. at 96.)

For the most part, the ALJ found Ms. Palmer's testimony credible. But the ALJ found that Ms. Palmer's description of Plaintiff's limitations did not foreclose the possibility that Plaintiff could "perform tasks not requiring significant social contact." (Tr. at 28.) The ALJ supported this conclusion by citing instances in the record where Plaintiff responded well to medication, and noting that "at no time has [Plaintiff] been observed to be responding to internal stimuli." (Tr. at 28.) The ALJ also noted that the record shows that Plaintiff "consistently exhibit[ed] intact concentration, attention and memory." (Tr. at 28.)

The ALJ failed to give germane reasons for rejecting Ms. Palmer's opinions relating to Plaintiff's need to sleep during the day, difficulty in performing daily activities, or inability to work under a supervisor. The fact that Plaintiff responded well to medication in certain instances, and, at times, exhibited intact concentration, attention, and memory, does not diminish Ms. Palmer's observations regarding Plaintiff's abilities. Furthermore, just because Plaintiff may be able to perform tasks that do not require "significant social contact" does not mean that she could work under a supervisor. The ALJ erred in giving little weight to Ms. Palmer's opinions.

### vi.    Sharon Marie McGaughy

Ms. McGaughy is Plaintiff's sister-in-law and spends about 10-12 hours/week with Plaintiff. (Tr. at 237.) Ms. McGaughy described how Plaintiff spends much her time sitting and staring out of the window and often lashes out in bursts of anger. (Tr. at 237, 241.) Ms. McGaughy noted that Plaintiff's sleep pattern had "drastically changed" such that Plaintiff cannot sleep except when "totally exhausted." (Tr. at 238.) Ms. McGaughy stated that Plaintiff has difficulty concentrating, completing tasks, following instructions, and getting along with others. (Tr. at 242.) Ms. McGaughy stated that Plaintiff needs to stop and rest after walking across a small room. (Tr. at 242.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 20

1    The ALJ found Ms. McGaughy's statements "not entirely credible in light of the
2    treatment record." (Tr. at 28.) The ALJ reasoned that there was no evidence that Plaintiff
3    needed to rest after walking across the room. The ALJ further rejected Ms. McGaughy's
4    description of Plaintiff's mental capacity because it contradicted the opinions of Plaintiff's
5    treating psychiatrist, Dr. Humann. (Tr. at 28 (citing [Tr. at 751]).)

6        The ALJ failed to give germane reasons for rejecting Ms. McGaughy's statement
7    regarding Plaintiff's ability to walk. Substantial evidence supports finding that it is painful
8    and difficult for Plaintiff to walk. (*See* Tr. at 58 (Plaintiff reports "not being able to walk
9    and run like [she] used to"); Tr. at 1278 (Plaintiff "fatigued and exhausted [from walking
10   across parking lot]"), Tr. at 1629 (Plaintiff "unable to walk").) Regarding Plaintiff's
11   mental impairments, Ms. McGaughy's opinions regarding Plaintiff's ability to concentrate,
12   complete tasks, and follow instructions are seemingly contradicted by Dr. Humann as
13   observed by the ALJ. (*See* Tr. at 28 (citing [Tr. at 751]).) But, as discussed *supra*, a
14   doctor's treatment notes must be read "in context of the overall diagnostic picture [drawn
15   by the doctor]." *Holohan*, 246 F.3d at 1205. Although Dr. Humann did note that
16   Plaintiff's memory, attention, and concentration were all intact, Dr. Humann also
17   diagnosed Plaintiff with serious mental impairments and opined that these impairments
18   prevented Plaintiff from working. (Tr. at 676-78.) When viewed in context, Dr. Humann's
19   opinions do not entirely contradict Ms. McGaughy's observations. Therefore, the ALJ did
20   not provide a germane reason for rejecting Ms. McGaughy's opinions regarding Plaintiff's
21   mental impairments.

22   **3.  Did the ALJ err at step two by not finding bipolar disorder to be a severe**
23   **impairment?**

24       Plaintiff argues that the ALJ erred by not finding Plaintiff's bipolar disorder to be a
25   severe impairment. The Court agrees.

26       The step-two analysis is "a de minimis screening device used to dispose of
27   groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment
28   is "not severe" if it does not "significantly limit" the ability to conduct "basic work

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 21

activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1279 (internal quotation marks omitted).  A claimant's own statement of symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508, 416.908.

In this case, the Court finds that the ALJ erred in concluding that Plaintiff's bipolar disorder was not a severe impairment.  As discussed *supra*, Dr. Humann diagnosed Plaintiff with bipolar disorder, as well as other mental physical impairments.  (Tr. at 645.)  Based on this diagnosis, Dr. Humann identified many marked and severe limitations and concluded that "[Plaintiff] is highly unlikely to be able to sustain employment due to her inability to respond appropriately to supervisors or work with others." (Tr. at 678.)  Based on Dr. Humann's diagnosis, and her opinion that Plaintiff is unable to work, there is sufficient medical evidence to conclude that Plaintiff's bipolar disorder significantly limits her ability to conduct basic work activities.  Accordingly, Plaintiff has overcome her de minimis burden required at step two.

**4.  Did the ALJ err in posing a hypothetical to the VE that did not take into account all of Plaintiff's limitations?**

"Hypothetical questions posed to the [VE] must set out all the limitations and restrictions of the particular claimant."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  An ALJ is not required to present the VE with those limitations he finds to be incredible and unsupported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

In this case, the ALJ asked the VE if a hypothetical individual would be able to work with the following RFC:

> lifting 20 pounds occasionally, 10 pounds frequently.  Standing, walking, sitting requirements are consistent with the full range of light work.  This

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 22

individual should not climb ladders, ropes, or scaffolds, she could occasionally climb ramps and stairs, she [should] avoid concentrated exposure to hazards, should avoid extreme cold, she should have no interaction with the public at work, should not work around children. She would be limited to simple, entry-level work and should not be assigned to team activities.

(Tr. at 98-99.) The VE concluded that there were jobs in the national economy consistent with this RFC. (Tr. at 99.)

Plaintiff's counsel then asked the VE a series of hypothetical questions. First, Plaintiff's counsel asked if a hypothetical individual could sustain employment if he or she required rest breaks beyond what employers are required to provide (i.e., a 10-15 minute break every 2 hours, and a 30 minute break every 4 hours). (Tr. at 100-01.) The VE concluded that such a person "would not be accommodated in the unskilled workforce." (Tr. at 101.) Next, Plaintiff's counsel asked whether someone would be able to work if she was (1) limited in her "ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances," and (2) unable to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 102.) The VE concluded that such a person would be "preclude[d] [from] gainful activity." (Tr. at 102.) Finally, Plaintiff's counsel asked the VE whether an individual could work if the individual was unable "to interact appropriately with the general public . . . [,] to get along with coworkers or peers without distracting them or exhibiting behavioral extremes[,] and . . . to sustain an ordinary routine without special supervision." (Tr. at 102.) The VE again concluded that such a person would not be able to work. (Tr. at 103.)

When Plaintiff's subjective complaints and the opinions of her treating physicians and "other" sources are properly credited, it is clear that the ALJ's hypothetical did not set out all of Plaintiff's functional limitations and restrictions. Substantial evidence supports Plaintiff's difficulty walking even short distances. Substantial evidence also supports Plaintiff's need to lie down multiple times during the day, sometimes for as long as an

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 23

1   hour.  Furthermore, substantial evidence supports finding that Plaintiff would be unable to
2   work under a supervisor or work without exhibiting behavioral extremes.  Because the
3   ALJ's hypothetical question was incomplete it "has no evidentiary value to support a
4   finding that the claimant can perform jobs in the national economy."  *DeLorme v. Sullivan*,
5   924 F.2d 841, 850 (9th Cir. 1991).  Instead, the Court credits the testimony of the VE in
6   response to Plaintiff's counsel's properly supported hypothetical questions.  *See*
7   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

8                                          **REMEDY**

9       The decision whether to remand for further proceedings or reverse and award
10  benefits is within the discretion of the district court.  *McAlliser v. Sullivan*, 888 F.2d 599,
11  603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful
12  purpose would be served by further administrative proceedings, or where the record has
13  been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d
14  1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly
15  burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990). *See also Garrison v.*
16  *Colvin*, No. 12-15103, at 50 (9th Cir. July 14, 2014) (noting that a district court may abuse
17  its discretion not to remand for benefits when all of these conditions are met). This policy
18  is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401.  But where
19  there are outstanding issues that must be resolved before a determination can be made, and
20  it is not clear from the record that the ALJ would be required to find a claimant disabled if
21  all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*,
22  379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.
23  2000).

24      In this case, the record has been thoroughly developed for the relevant period and
25  there are no outstanding issues that must be resolved.  If the ALJ had properly credited
26  Plaintiff's subjective complaints and the opinions of Plaintiff's treating physicians and
27  "other" sources, it is clear that Plaintiff has greater limitations and restrictions then
28  determined by the ALJ.  Furthermore, the VE indicated that there are no jobs available for

someone with Plaintiff's limitations.  There are no further issues to resolve and additional proceedings would serve no useful purpose and would only cause unnecessary delay.

Accordingly,

**IT IS ORDERED** that:

1.  Defendant's Motion for Summary Judgment, filed April, 21 2014, **ECF No. 21**, is **DENIED**.

2.  Plaintiff's Motion for Summary Judgment, filed March 11, 2014, **ECF No. 16**, is **GRANTED**.

3.  The Commissioner's decision is **REVERSED** and the matter **REMANDED** to the Commissioner for the immediate calculation and payment of benefits to Plaintiff. 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order and provide copies to counsel.  Judgment shall be entered for the Plaintiff and the file shall be **CLOSED**.

**DATED** this 22nd day of July, 2014.


_____s/ Wm. Fremming Nielsen_____
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

07-07-14

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 25